Venkat Balasubramani (SBN 189192)
**FOCAL PLLC**
800 Fifth Ave, Suite 4100
Seattle, WA 98104
Phone: (206) 529-4827
Fax: (206) 260-3966
*venkat@focallaw.com*

Richard P. Sybert (SBN 80731)
rsybert@gordonrees.com
Yuo-Fong Amato, Bar No. 261453
*bamato@gordonrees.com*
**GORDON & REES LLP**
101 W. Broadway, Suite 1600
San Diego, CA 92101
Phone: (619) 696-6700
Fax: (619) 696-7124

Attorneys for Defendant
MEGAUPLOAD LTD.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERFECT 10, INC., a California corporation, | Case No. 11cv0191 IEG BLM |
| Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT MEGAUPLOAD LIMITED'S MOTION TO DISMISS** |
| v. | |
| MEGAUPLOAD LIMITED, a Hong Kong corporation; KIM SCHMITZ, an individual; and DOES 1 through 100, inclusive, | Hon. Irma E. Gonzalez |
| Defendants. | Date: April 25, 2011 |
| | Time: 10:30AM |
| | Courtroom: 1 |

# TABLE OF CONTENTS

TABLE OF CONTENTS

TABLE OF AUTHORITIES

**I.    INTRODUCTION** ...........................................................................................1

**II.   FACTUAL BACKGROUND** ...........................................................................2

**III.  DISCUSSION** ...................................................................................................2

    A.  Perfect 10's Complaint Fails to Plead Infringement with Particularity ................2

    B.  Copyright Claims ..............................................................................................4

        1.  *Perfect 10's claim for direct infringement fails because it does not adequately volitional conduct*..........................................................................4

        2.  *Perfect 10's claim for contributory infringement fails, because it fails to allege that Mega had specific knowledge of any underlying infringing activity*......................6

        3.  *Perfect 10's claims for vicarious infringement fail because the complaint does not allege that Mega had the "right and ability" to supervise any infringing conduct*..................................................................8

        4.  *The Rapidshare preliminary injunction ruling is instructive*...................9

    C.  Trademark/Lanham Act Claims ......................................................................10

        1.  *Dastar precludes claims based on communicative products or service*......10

        2.  *Perfect 10 fails to allege a likelihood of confusion, mistake, or deception as to affiliation*..................................................................11

    D.  Unfair Competition .........................................................................................14

    E.  Publicity Rights ..............................................................................................15

        1.  *Perfect 10's publicity rights claims are preempted because they are based solely on the reproduction or distribution of photographs embodying those rights*....15

        2.  *In the event the publicity rights claims are not preempted, they should be dismissed as overly vague*..................................................................16

**IV.  CONCLUSION** ..............................................................................................17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **TABLE OF AUTHORITIES**

### **Cases**

A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004 (9th Cir. 2001) .............................. 6

Bach v. Forever Living Prods. U.S., Inc., 473 F. Supp. 2d 1110 (W.D. Wash. 2007) ................ 10

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) ................................................... 2

Blumenthal v. Drudge, 992 F. Supp. 44 (D.D.C. 1998) ................................................ 16

Brookfield Comm., Inc. v. West Coast Entertainment Corp., 174 F.3d 1036 (9th Cir. 1999) ..... 11

Bucklew v. Hawkins, Ash, Baptie & Co., 329 F. 3d 923 (7th Cir. 2003) .................................. 14

CoStar Group, Inc. v. LoopNet, Inc., 373 F.3d 544 (4th Cir. 2004)................................... 5

Dastar Corporation v. Twentieth Century Fox Film Corporation, 539 U.S. 23 (2003)............... 10

Del Madera Properties v. Rhodes & Gardner, Inc., 820 F.2d 973 (9th Cir. 1987)....................... 14

Downing v. Abercrombie & Fitch, 265 F.3d 994 (9th Cir. 2001) ................................. 14

Durham Indus., Inc. v. Tomy Corp., 630 F.2d 905 (2d Cir. 1980)................................. 14

Field v. Google, Inc., 412 F. Supp. 2d 1106 (D. Nev. 2006)........................................... 5

Fleet v. CBS, Inc., 58 Cal. Rptr. 2d 645 (Ct. App. 1996).............................................. 16

Fonovisa, Inc. v. Napster, Inc., 2002 U.S. Dist. LEXIS 4270 (N.D. Cal. Jan. 28, 2002)............... 6

Fractional Villas, Inc. v. Tahoe Clubhouse, 2009 U.S. Dist. LEXIS 4191 (S.D. Cal. Jan. 22,
    2009) ....................................................................................................... 11

G.S. Rasmussen & Assoc., Inc. v. Kalitta Flying Service, Inc., 958 F.2d 896, (9th Cir. 1992)... 14

Gottlieb Dev. LLC v. Paramount Pictures Corp., 590 F. Supp. 2d 625 (S.D.N.Y. 2008).............. 3

Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129 (C.D. Cal. 2001)........................................... 14

Inwood Laboratories, Inc. v. Ives Laboratories, Inc., 456 U.S. 844 (1982) ................................. 13

IO Group, Inc. v. Veoh, 586 F. Supp. 2d 1132 (N.D. Cal. 2009)...................................... 8

Laws v. Sony Music Entertainment, 448 F.3d 1134 (9th Cir. 2006)........................................... 15

Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc., 2010 U.S. Dist. LEXIS 85266
    (N.D. Cal. Mar. 19, 2010)....................................................................................... 13

Miller v. Facebook, Inc., 2010 U.S. Dist. LEXIS 31534 (N.D. Cal. Mar. 31, 2010) ................... 3

Morris v. Buffalo Chips Bootery, Inc., 160 F. Supp. 2d 718, 721 (S.D.N.Y. 2001) .................. 14

Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146 (9th Cir. 2007) ...................................... 1, 6

Perfect 10, Inc. v. CCBill, LLC, 448 F.3d 1102 (9th Cir. 2007) .............................................. 1, 16

Perfect 10, Inc. v. Cybernet Ventures, Inc., 213 F. Supp. 2d 1146 (C.D. Cal. 2002).................... 9

Perfect 10, Inc. v. Visa Int'l Service Ass'n, 494 F.3d 788 (9th Cir. 2007) .................................... 1

Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134 (9th Cir. 1997) ............................... 12

Summit Machine Tool Mfg. v. Victor CNC Systems, Inc., 7 F.3d 1434 (9th Cir. 1993) ........... 15

Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137 (9th Cir. 2008)................................... 12

Tiffany (NJ) Inc. v. eBay Inc., 600 F.3d 93 (2d Cir. 2010) .................................................. 12, 13

VISA Int'l Service Ass'n, 494 F.3d 788 (9th Cir. 2001)............................................................. 8

Warner Bros. v. American Broadcasting Cos., 720 F.2d 231 (2d Cir. 1983).............................. 14

Williams v. Scribd, Inc., 2010 U.S. Dist. LEXIS 90496 (S.D. Cal. June 23, 2010).............. 3, 5, 6

## Statutes

15 U.S.C. § 1125(a) ................................................................................................................ 12

17 U.S.C. § 301(a) ............................................................................................................ … 14

17 U.S.C. § 512(c)(3)(vi)............................................................................................................7

MEMORANDUM OF POINTS &
AUTHORITIES

## I.   INTRODUCTION

Plaintiff Perfect 10, Inc. ("Perfect 10") is a Beverly Hills-based owner of adult-themed and pornographic content whose business appears to have become largely litigation of copyright claims.  It has litigated—and lost—numerous copyright disputes.[1]

Defendant Megaupload Limited ("Mega") operates a virtual locker service, which allows end users to store files. Mega does not exert any control over what its users upload, although it requires its users to comply with its stated acceptable use standards.  Mega also implements a Digital Millennium Copyright Act ("DMCA") policy whereby Mega will remove content when it receives a notice of infringement.

Perfect 10 brings a variety of claims against Mega in the current suit, but fails to offer any specificity as to how Mega's actions infringe on Perfect 10's copyrights—i.e., that Mega itself uploaded any content or had specific knowledge as to infringing content that was uploaded by its users.  There is no dispute that Mega is an intermediary who allows third parties to upload and store their content.

The remainder of Perfect 10's claims against Mega are vague, and impermissibly so. Perfect 10 vaguely alleges that Mega engages in acts of infringement through a network of affiliates, but offers no specifics about Mega's supposed affiliate program. Perfect 10's vague allegations regarding the acts of third parties are insufficient to state a claim against Mega.

Perfect 10's trademark claims suffer from similar deficiencies.  These claims are merely

---

[1] *See*, *e.g.*, Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146 (9th Cir. 2007) (dismissing claims for direct infringement against Amazon.com and Google, but leaving open the issue of whether Amazon.com and Google may be liable for contributory infringement); Perfect 10, Inc. v. CCBill, LLC, 448 F.3d 1102 (9th Cir. 2007) (dismissing claims against CC Bill); Perfect 10, Inc. v. Visa Int'l Service Ass'n, 494 F.3d 788 (9th Cir. 2007) (affirming dismissal of copyright and state law claims against payment processing companies). Perfect 10, which is based in Los Angeles, has previously brought cases in the Central and Northern Districts of California, but has apparently now decided to shift to the Southern District of California. Perfect 10's cases filed in the Southern District of California include Perfect 10, Inc. v. Hotfile Corp. (No. 10-CV-2031 MMA) (which is currently pending) and Perfect 10, Inc. v. Rapidshare A.G. (No. 09-CV-2596 H (WMC) (which settled).  Interestingly, in the Rapidshare case, Judge Huff denied Perfect 10's request for injunctive relief, despite finding that Rapidshare "had not yet designated [a DMCA] agent with the U.S. Copyright Office." (*See* Request for Judicial Notice, Ex. C.)

---

recycled copyright claims, as Mega neither provides similar goods nor services nor attempts to pass off any alleged Perfect 10 products as its own. Even if this Court finds that the trademark claims are allowable, Perfect 10 fails to allege the requisite knowledge to support a claim for derivative liability. Perfect 10's state law claims are preempted by the Copyright Act, and in the event they are not, are also impermissibly vague.

For all these reasons, the Complaint should be dismissed.

## II.      FACTUAL BACKGROUND

Perfect 10 brings claims for copyright and trademark infringement, unfair competition, and for violation of the rights of publicity and privacy (based on publicity rights that were allegedly assigned to Perfect 10). It alleges that it "was the publisher" of an allegedly well-known magazine that is now defunct. (Complaint, ¶ 13.) At one time Perfect 10 generated revenue through sales of calendars and other merchandise, but states that it does not currently earn revenue from these endeavors. (*Id.*, ¶ 14.) Perfect 10 avers that it currently operates an internet site at <perfect10.com> through which it generates revenues.

Mega operates various websites through which it allows its users to upload content. Mega provides its users a link to the content they upload, which the users can then use. (Complaint, ¶ 22.) At its root, Mega is a "file storage" company, much like many others. The complaint does not allege that Mega exerts control over the content that its users upload. Mega has in place a DMCA-compliant mechanism (one that Perfect 10 alleges is deficient) to allow copyright owners to send takedown requests to Mega. (*Id.*, ¶ 30(b).)

Perfect 10 does not allege specifically that Mega uploaded any copyrighted material to Mega's website. Perfect 10 alleges that it sent several takedown requests to Mega, but does not allege that Mega failed to act on these requests.

## III.      DISCUSSION

**A.    Perfect 10's Complaint Fails to Plead Infringement with Particularity**

The factual allegations in a complaint must "raise a right to relief above the speculative level . . . ." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Several courts have applied Twombly in the copyright context to require a copyright plaintiff to do more than put

forth a formulaic recitation of legal conclusions. *See, e.g.*, <u>Williams v. Scribd, Inc.</u>, 2010 U.S. Dist. LEXIS 90496 (S.D. Cal. June 23, 2010); <u>Miller v. Facebook, Inc.</u>, 2010 U.S. Dist. LEXIS 31534 (N.D. Cal. Mar. 31, 2010).  Courts have also applied <u>Twombly</u> to trademark claims.  *See* <u>Gottlieb Dev. LLC v. Paramount Pictures Corp.</u>, 590 F. Supp. 2d 625, 636 (S.D.N.Y. 2008) (dismissing trademark claims because plaintiff failed to "amplify its trademark claim with factual allegations to rise 'above the speculative level' . . . .")  While neither <u>Twombly</u> nor the Federal Rules requires plaintiff to detail each and every instance of infringement, the complaint must provide some basic allegations around the details of the infringement.

      Here, Perfect 10 makes a variety of vague claims that lack any specificity regarding the underlying allegations. For example:

- Perfect 10 claims that "Does 1 through 100 . . . are businesses owned or controlled by Megaupload"—Perfect 10 does not provide an example or allege any underlying facts regarding the supposed common ownership or control;

- Perfect 10 claims that "Megaupload . . . upload[s] copyright and trademarked intellectual property"—Perfect 10 does not provide a single example of any work allegedly uploaded by Megaupload (as distinguished from content uploaded by its users);

- Perfect 10 claims that "The URLs [which link to the content] are disseminated . . . by Megaupload]"—Perfect 10 does not provide an example of any links Mega disseminated;

- Perfect 10 claims that it sent Mega twenty-two copyright notices,[2] but that "most of these identified infringing works have not been removed"—again Perfect 10 does not provide a single example of a work identified by it that Mega failed to remove after receiving a notice from Perfect 10; and

- Perfect 10 alleges that Mega and its "affiliated" websites use Perfect 10 marks—

---

[2]  As argued *infra*, the notices transmitted by Perfect 10 were deficient in that in most of the instances these notices refer to copyrighted material which have no relationship whatsoever to Perfect 10, and in other instances refer only to publicity rights which were allegedly assigned to Perfect 10.

Perfect 10 fails to offer a single example of any alleged use of Perfect 10 trademarks by these affiliates.

Above all, Perfect 10 alleges vaguely that Mega uploads content, and has some sort of amorphous affiliate network through which it perpetrates alleged trademark and copyright infringement.  Perfect 10 fails to provide a single example of an allegedly infringing work uploaded by Mega (as distinguished from Mega's users), or any affiliated entity through which Mega perpetrates the alleged infringements for which Perfect 10 seeks to hold Mega derivatively liable.  Nor does Perfect 10 offer anything more than its vague and amorphous allegations in support of these claims.  With respect to third party content, Perfect 10 fails to allege any instance where Mega allowed content to remain on its system after Mega had knowledge of the content.  Perfect 10's allegations simply fail to satisfy the specificity required of a plaintiff bringing copyright or trademark claims, and the complaint should therefore be dismissed.

**B.    Copyright Claims**

1.    <u>Perfect 10's claim for direct infringement fails because it does not adequately allege volitional conduct.</u>

The Complaint alleges vaguely that "Megaupload and its users" upload content. However, it fails to allege even one specific piece of content that Mega is alleged to have uploaded, or any particular copyrighted work that Perfect 10 owns that Mega allegedly uploaded. Perfect 10's allegations fail to satisfy the <u>Twombly</u> standard of rising above a speculative level. Perfect 10 alleges that Mega sells access to "large amounts of unauthorized intellectual property to the public," but these allegations are similarly vague.  Indeed, if the infringement is as widespread as Perfect 10 would have the Court believe, Perfect 10 should be able to allege at least one specific instance of infringement—i.e., one item of Perfect 10's copyrighted work that was uploaded by Mega or to which Mega "sold access."  Perfect 10 fails to do this, and fails to satisfy the specificity required of its pleadings.

Perfect 10's pleadings acknowledge that end users can upload content to Mega's services. (*See* Complaint, ¶ 22.)  However, Perfect 10's complaint fails to state a claim of direct infringement with respect to content uploaded by third parties.  In the context of an intermediary

such as Mega, Perfect 10 must allege "some volitional conduct on the part of the defendant." *See* CoStar Group, Inc. v. LoopNet, Inc., 373 F.3d 544, 551 (4th Cir. 2004); see also Field v. Google, Inc., 412 F. Supp. 2d 1106, 1115 (D. Nev. 2006) ("A plaintiff must . . . show volitional conduct on the part of the defendant in order to support a finding of direct copyright infringement."). Perfect 10's complaint lacks any facts to support this allegation. As the complaint acknowledges, Mega allows its users to upload content, and when this content is uploaded, Mega "provides to its users a unique Uniform Resource Locator ("URL") which allows its users to view or download the file from the website." The URLs are then allegedly "disseminated throughout the internet by Megaupload and its users." (Complaint, ¶ 22.) But the complaint does not specify what URLs Mega disseminates, nor does it provide any examples. Nor does the complaint specify whether Mega makes any editorial choices in disseminating these URLs. The court's decision in Williams v. Scribd is instructive as to why Perfect 10's complaint cannot survive the instant motion to dismiss. 2010 U.S. Dist. LEXIS 90496, at *17-18 (S.D. Cal., June 23, 2010).

In Williams, the plaintiff alleged six specific copyrighted works that were allegedly uploaded to Scribd. The plaintiff did not allege that the works were uploaded by Scribd, but instead alleged that they were uploaded by a third party user named "GalaxiaMia Guy." The court noted that plaintiff failed to sufficiently allege "volitional conduct" on Scribd's part because it was a third party, rather than Scribd, who uploaded the works in question. In an attempt to get around this, plaintiff alleged that Scribd and "GalaxiaMia Guy" had a relationship—i.e., they were "friends" on the Scribd website. The court held that this allegation was insufficient to state a direct claim of infringement against Scribd:

> [t] actual relationship between GalaxiaMia Guy and [Scribd's CEO] . . . is wholly speculative, and by itself insufficient to allow the court to draw the "reasonable inference" that Scribd volitionally infringed [plaintiff's] copyright. At best, [plaintiff] has succeeded in raising the possibility that Scribd is liable for direct copyright infringement, given that [Scribd's CEO] and GalaxiaMia Guy may know one another, and that [the CEO] may have been aware of GalaxiaMia Guy's infringing uploads to the Scribd website, but Iqbal requires more than the "sheer possibility that this is the case."

Id.

1    Perfect 10's complaint against Mega is even more speculative than Williams's allegations

2    against Scribd.  Perfect 10 alleges that Mega is a site that perpetrates infringement on a massive

3    scale, and that Mega is among the 100 most visited websites in the world.  Yet, Perfect 10 fails to

4    allege a single instance of a Perfect 10 work being uploaded by Mega, and fails to allege any

5    volitional conduct by Mega which is sufficient to base liability for direct infringement.  Perfect

6    10's derivative claims for copyright infringement against Mega are similarly vague and fail to

7    rise above the speculative level.

8            2.    Perfect 10's claim for contributory infringement fails, because it fails to allege
9                  that Mega had specific knowledge of any underlying infringing activity.

10          In Perfect 10, Inc. v. Amazon.com, the Ninth Circuit held that "a computer system

11   operator can be held contributorily liable if it has *actual knowledge* that specific infringing

12   material is available using its system," can take "simple measures" to prevent further

13   infringement, and fails to do so.  Perfect 10, Inc. v. Amazon.com, Inc., 487 F.3d 701, 729 (9th

14   Cir. 2007) (emphasis in original) (citing Napster, 239 F.3d at 1022).  Similarly, in Williams v.

15   Scribd, the court denied defendant's motion to dismiss the contributory liability claim, but

16   pointed to the fact that plaintiff alleged that (1) a specific copyrighted item was uploaded and

17   (2) Scribd had actual knowledge—Scribd had been informed of the item in question, and

18   appeared to have a relationship with the person who uploaded the item.  Williams v. Scribd,

19   2010 U.S. Dist. LEXIS 90496, at *20 (S.D. Cal., June 23, 2010).[3]  Both elements are missing

---

20   [3]  Peer-to-peer file sharing cases have utilized the lower "reason to know" standard, both based
21   on evidence that the networks were aware of and promoted infringement, or based on the
     architecture of the networks.  *See, e.g.*, A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004 (9th
22   Cir. 2001). Judge Patel expressly rejected Napster's argument that actual knowledge was
     required to bring a claim for contributory liability.  Fonovisa, Inc. v. Napster, Inc., 2002 U.S.
23   Dist. LEXIS 4270 (N.D. Cal., Jan. 28, 2002). However, in the context of an online service
     provider, however, courts have required actual knowledge. *See, e.g.*, Williams v. Scribd, at * 19
24   ("[t]here is a critical variation in the online context: [a] plaintiff must allege and show *actual*
     *knowledge*") (emphasis added).  In addition, the Ninth Circuit's opinion in Perfect 10, Inc. v.
25   Amazon.com is replete with language indicating that the appropriate standard is "actual
     knowledge."  *See* Perfect 10, Inc. v. Amazon.com, 508 F.3d 1146, 1170 (9th Cir. 2007)
26   ("Grokster tells us that contribution to infringement must be intentional for liability to arise); 508
27   F.3d at 1171 (citing Napster, and noting that "if a computer system operator learns of specific
     infringing material available on his system and fails to purge such material from the system, the
28

---

here.  Perfect 10 does not allege any specific items that were uploaded by Mega's users, or more importantly, that Mega had actual knowledge of these alleged infringements by end users.

Perfect 10 cites three reasons as to why Mega was aware of allegedly infringing works residing on Mega's system.

First, Perfect 10 cites to twenty-two notices sent by Perfect 10 to Mega that allegedly put Mega on notice that Mega was infringing on copyrighted works.  However, the majority of notices sent to Mega do not relate to any Perfect 10 work. Rather, they relate to works owned by third parties. [4]  (See Declaration of Bram van der Kolk ("van der Kolk Decl."), Exhibits 1-19.)  Only one notice relates to Perfect 10's copyrighted works, but the complaint does not allege the identity of the person who uploaded these works or that Mega had any relationship to this person. Nor does the complaint allege that the materials remained on Mega's network after Perfect 10 sent these notices.

Second, Perfect 10 alleges that Mega "offered" electronic copies of Perfect 10's magazine. (See Complaint, ¶ 30(b).)  Given that Mega makes available content uploaded by its end users, this does not adequately allege knowledge on the part of Mega.  Again, the fact that Perfect 10 copyrighted material resided on or was made available through Mega's network is not in itself sufficient to hold Mega liable for contributory infringement.  As in Scribd, Perfect 10 must allege some sort of relationship between Mega and the person who uploaded the item, or that Mega had specific knowledge of these items to survive a motion to dismiss (although this court indicated that the thin allegations in the Scribd case would likely not survive a motion for summary judgment).

Finally, Perfect 10 alleges that Megaupload "does not own anything it sells access to."

---

operator knows of and contributes to direct infringement"); 508 F.3d at 1172 (Napster and Netcom "are consistent with Grokster because both decisions ruled that a service provider's knowing failure to prevent infringing actions could be the basis for imposing contributory liability").

[4] A DMCA-compliant takedown notice must also contain "[a] statement that the information in the notification is accurate, and under penalty of perjury, that the complaining party is authorized to act on behalf of the owner of an exclusive right that is allegedly infringed."  17 U.S.C. § 512(c)(3)(vi).

This allegation is similarly vague and misstates the nature of Mega's file storage services.  Like many online businesses and networks, Mega offers free services to basic users and premium services to certain paying users. Mega does not offer any content specifically to paying users that is not available to any non-paying users.  Thus, the allegation that Mega is "selling access" to any content is simply incorrect.  In any event, this allegation is similarly vague.  If Mega indeed offered access in exchange for fees to Perfect 10 content, Perfect 10 should be able to cite to an example.  Its complaint fails to do this, and this allegation therefore does not adequately support Perfect 10's claims for contributory or direct copyright infringement.

Perfect 10's claims for vicarious infringement are similarly insufficient.

3.   Perfect 10's claims for vicarious infringement fail because the complaint does not allege that Mega had the "right and ability" to supervise any infringing conduct.

Vicarious infringement requires Perfect 10 to show that Mega had the "right and ability to supervise" the infringing conduct, and had a "direct financial interest" in the infringing activity.  The "right and ability" element requires more than a showing that Mega had the right and ability to "control its system."  *See* IO Group, Inc. v. Veoh, 586 F. Supp. 2d 1132, 1154 (N.D. Cal. 2009).  Citing to VISA Int'l Service Ass'n, the court in IO Group stated that: "[in order for vicarious liability to attach] . . . the defendant must have the right and ability to supervise and control the infringement, not just affect it."  Id. (citing VISA Int'l Service Ass'n, 494 F.3d  788, 802-05 (9th Cir. 2001)).[5]  The pertinent question as stated by IO Group is "not whether [defendant] has the right and ability to control its *system*, but rather it has the right and ability to control the *infringing activity*."  Id.  A service provider's ability to "block or remove access to materials" does not equal right and ability to control in this context. The cases make clear that in order to satisfy the "right and ability" test, the service provider must have

---

[5]   Although IO Group adjudicated a defense of DMCA immunity and interpreted the "right and ability" test as that language is found in the DMCA, the court made clear that "these requirements grew out of the common law standard for vicarious liability, and the Ninth Circuit has indicated that these elements under the DMCA are to be interpreted consistently with common law."  Io Group, Inc. v. Veoh Networks, Inc., 586 F. Supp. 2d 1132, 1150 (N.D. Cal. 2008).

"something more" than the ability to filter content or terminate user accounts.  For example, in Perfect 10, Inc. v. Cybernet Ventures, Inc., the court held that Perfect 10 satisfied the right and ability test where defendant had, among other things, "prescreen[ed] [the infringing] sites, [gave] them extensive advice, [and] prohibit[ed] the proliferation of identical sites."  Perfect 10, Inc. v. Cybernet Ventures, Inc., 213 F. Supp. 2d 1146, 1182 (C.D. Cal. 2002).

Here, Perfect 10 fails to allege such ability on the part of Mega.  As with all service providers, Mega has some ability to filter or remove content, but this does not equate to the "right and ability" as required under the relevant cases addressing vicarious liability. Perfect 10 does not adequately allege that Mega had a contractual relationship with any end user who posted or made available infringing content through which Mega controlled the type of content uploaded by any end user.  The complaint simply does not support the indicia of control—i.e., that something more—that was present in Cybernet Ventures. Accordingly, Perfect 10's claims for vicarious infringement must be dismissed.

4.    The Rapidshare preliminary injunction ruling is instructive.

Perfect 10 previously asserted similar claims against Rapidshare, an entity that offers services that are similar to those offered by Mega. The Rapidshare case did not result in a dispositive ruling.  However, Judge Huff denied Perfect 10's motion for a preliminary injunction against Rapidshare.  See Request for Judicial Notice, Ex. C (Perfect 10, Inc. v. Rapidshare AG, No. 3:2009-cv-02596 (S.D. Cal.; May 18, 2010)). Although this Court found the characterization of Rapidshare's service to be disputed, the Court nevertheless found that Perfect 10 was not likely to succeed on its claims for direct infringement based on a theory of distribution by sale. (Rapidshare Order, p. 5.)  The Court also found that Perfect 10 was not likely to succeed on its theory of "deemed distribution," because Rapidshare does not make any infringing material "in the same way or to the same extent as [the defendants in Hotaling or Napster]."  (Id. at 6.)  With respect to Perfect 10's claims of contributory infringement, the Court found that Rapidshare did not make any material contribution to the infringing activities of its users.  (Id. at 9.)

Judge Huff also held that the balance of equities did not tip in Perfect 10's favor, noting that Perfect 10 "ha[d] not availed itself of simple, available measures to protect its property."

1  (Id. at 14.)  The court also pointed to evidence that Perfect 10 "was aware its copyrighted images

2  were available on Rapidshare's servers in 2005, but nonetheless waited until November 2009 to

3  file . . . a lawsuit."  (Id.)  The court came to this conclusion and denied Perfect 10's request for

4  an injunction notwithstanding the fact that Rapidshare did not have a designated DMCA agent in

5  place and therefore could not avail itself of protection under the DMCA. In the instant case,

6  Mega has a designated DMCA agent and has filed the requisite filings with the copyright office,

7  and will raise DMCA immunity at a dispositive stage in this litigation. Judge Huff's conclusion

8  in the Rapidshare case is telling, and highlights the fact the flaws underlying Perfect 10's

9  theories of liability.

10  **C.      Trademark/Lanham Act Claims**

11          Perfect 10 brings a variety of trademark-based claims against Mega.  These claims fail

12  for two reasons.  First these claims are merely copyright claims disguised as trademark claims,

13  and are precluded by Dastar Corporation v. Twentieth Century Fox Film Corporation, 539 U.S.

14  23, 28 (2003).  Second, Perfect 10 fails to allege that Mega has used any Perfect 10 marks in a

15  manner that is likely to cause confusion, mistake, or deceive as to the association between

16  Perfect 10 and Mega.  Finally, even if the claims can be asserted as standalone trademark claims,

17  they are impermissibly vague as to Mega's direct liability and derivative liability.

18          1.      Dastar precludes claims based on communicative products or services.

19          In Dastar v. Twentieth Century Film Fox Corp., the Supreme Court narrowed the scope

20  of available Lanham Act claims that can be brought against sellers or distributors of

21  communicative products.  539 U.S. at 28; Bach v. Forever Living Prods. U.S., Inc., 473 F. Supp.

22  2d 1110, 1116 (W.D. Wash. 2007) (citing Dastar and noting that the Court has cautioned

23  "against misuse or over-extension of trademark and related protections into areas traditionally

24  occupied by patent or copyright").  In Dastar, Dastar distributed a video without proper

25  attribution. The Court held that "origin," in the context of the Lanham Act  refers only to the

26  manufacturer or producer of a physical good and not to the creator of the underlying intellectual

27  property. As a result, Dastar was not liable for "any false designation of origin" because Dastar

28  was the "origin" of the modified video series.  Courts have applied Dastar to bar trademark

MEMORANDUM OF POINTS                    10                  Case No. 11cv0191 IEG BLM
& AUTHORITIES

claims where the core allegation against the defendant is the improper reproduction of the plaintiff's copyrighted material.  For example, in <u>Fractional Villas, Inc. v. Tahoe Clubhouse</u>, the plaintiff asserted a trademark and a copyright claim based on defendant's use of plaintiff's copyrighted material.  2009 U.S. Dist. LEXIS 4191, at *10-11 (S.D. Cal. Jan. 22, 2009).  The court rejected the trademark claims:

> Plaintiff has not accused defendants of taking tangible objects or services, repackaging them, and selling them under defendants' name.  Rather, *plaintiff has accused defendants of incorporating copyrighted materials into defendants' website*.  Therefore, the Court finds plaintiff has failed to plead a cause of action under the Lanham Act.

<u>Id.</u>, (emphasis added).

Here, Perfect 10 does not accuse Mega of selling any tangible materials under Perfect 10's name.  Perfect 10 alleges that Mega improperly utilized Perfect 10's content.  (*See*, *e.g.*, Complaint, ¶ 28 ("Megaupload illegally stores, copies, distributes, sells and displays . . . thousands of Perfect 10 copyrighted images . . . that infringe upon Perfect 10 trademarks . . ."); Complaint, ¶ 60 (the "Infringing Websites . . . intermingle Perfect 10's . . . images with images of poor quality").)  However, trademark claims based on these allegations are foreclosed by <u>Dastar</u>.  Perfect 10 merely claims that Mega improperly claimed that it was a source of Perfect 10 images, but as <u>Dastar</u> makes clear, "origin" in the Lanham Act context refers to the source of physical goods.  There is no allegation in the complaint that Mega is using any Perfect 10 marks to advertise Mega's own products, and this is the only type of trademark claim that Perfect 10 can bring under <u>Dastar</u>.

       2.    <u>Perfect 10 fails to allege a likelihood of confusion, mistake, or deception as to affiliation</u>.

Perfect 10's trademark claims are also deficient because Perfect 10 fails to allege that Mega's alleged use of its trademarks would be likely to cause consumer confusion.  <u>Brookfield Comm., Inc. v. West Coast Entertainment Corp.</u>, 174 F.3d 1036, 1046 (9th Cir. 1999).  Nor does Perfect 10 claim that Mega made "any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, mistake, or deception as to affiliation." 15 U.S.C. § 1125(a).  Perfect 10 must allege that Mega used its marks in a manner likely to cause

confusion, or made a false statement regarding the origin or qualities of either Perfect 10's or Mega's products or services.  Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1139 (9th Cir. 1997).  Perfect 10's sole allegation in this regard is that Mega is "using . . . the Perfect 10 Marks . . . for the purpose of . . . directing consumers who are searching for . . . Perfect 10 products or services" to Mega's site, where Perfect 10 alleges (elsewhere in its complaint that) Mega makes available "thousands of Perfect 10 copyrighted images." (*See* Complaint, ¶¶ 52 and 28.)  These allegations undermine Perfect[10]'s Lanham Act claims, since by Perfect 10's own allegations, Mega's alleged use of Perfect 10 marks would direct consumers who are searching for Perfect 10 material to Perfect 10 content on Mega's website. To the extent this content is "unauthorized" or that Perfect 10 claims that consumers were allegedly deceived into believing that Mega improperly held itself out as an "authorized" source of Perfect 10 content, these are claims that are properly asserted as copyright claims.  These allegations are also deficient, because Perfect 10 fails to allege how Mega held itself out as an alleged "authorized" source for Perfect 10 content.  In any event, the Ninth Circuit has expressly rejected Lanham Act claims based on alleged misrepresentation as to the copyright licensing status of copyrightable material, holding that to do so would improperly expand the scope of copyright law, by "allow[ing] competitors engaged in the distribution of copyrightable materials to litigate the underlying copyright infringement when they have no standing to do so because they are nonexclusive licensees or third party strangers under copyright law." Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137, 1144 (9th Cir. 2008).

   3. <u>Derivative trademark liability has to satisfy a knowledge standard</u>.

  Perfect 10 also brings claims against Mega for derivative trademark liability.  The prevailing case dealing with derivative trademark liability is Tiffany (NJ) Inc. v. eBay Inc., 600 F.3d 93 (2d Cir. 2010).  There, Tiffany brought a variety of trademark-based claims against eBay for allegedly selling counterfeit materials.  The Second Circuit applied the Inwood test, under which a service provider will be held liable for infringements by its users either where the service provider: (1) "intentionally induc[es] another to infringe a trademark," or (2) where the service provider "continues to supply its [service] to one whom it knows or has reason to know is

engaging in trademark infringement."  <u>Inwood Laboratories, Inc. v. Ives Laboratories, Inc</u>., 456 U.S. 844, 854 (1982).

Tiffany argued that eBay's generalized knowledge was sufficient to impose derivative liability, but the Second Circuit disagreed:

> For contributory trademark infringement liability to lie, a service provider must have more than a general knowledge or reason to know that its service is being used to sell counterfeit goods. Some contemporary knowledge of which particular listings are infringing or will infringe in the future is necessary.

<u>Tiffany</u>, <u>supra</u>, 600 F.3d at 107 (emphasis added).  A recent case from the Northern District of California is in accord with the Second Circuit's approach in <u>Tiffany</u>.  *See* <u>Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.</u>, 2010 U.S. Dist. LEXIS 85266 (N.D. Cal. Mar. 19, 2010).  In <u>Akanoc</u>, the plaintiff sued a web-host for counterfeit products sold through the websites of its customers.  The court held that contributory liability for trademark infringement can be shown by "intentional inducement" or by a showing that the defendant continued to supply an infringing product with "knowledge."  <u>Id.</u> at *35.  In denying defendant's motion for a new trial, the court pointed to the fact that defendant was presumed to have knowledge of the infringing activity, due to the "large number" of infringement notices that defendant received.  <u>Id.</u> at fn. 17.

Perfect 10's complaint does not specify which third parties or "Affiliated Infringing Websites" utilized Perfect 10's marks, but even if it did, the Complaint fails to plausibly allege that Mega supplied its services to such third parties after having knowledge of the specific infringements in question.  As in <u>Tiffany</u>, an allegation that Perfect 10 "knew as a general matter that" affiliated entities or customers were using Perfect 10's marks is insufficient.  <u>Id.</u> at 35.  This is the most Perfect 10 alleges.  Perfect 10 alleges that it sent takedown notices to Mega, but these notices are not sufficient to satisfy the knowledge requirement.  *See generally*, van der Kolk Decl. (the takedown notices).  *Not a single one* of the Perfect 10 notices refer to any trademark rights, much less to any rights that Perfect 10 allegedly has.  <u>Id.</u>  Accordingly, Perfect 10's claims for derivative liability for trademark infringement must be dismissed.  Further, Perfect 10's derivative claims for trademark dilution are insufficient for the same reasons that its claims

for trademark infringement are insufficient, and they should be dismissed for this reason.

**D.     Unfair Competition**

A plaintiff's state-law cause of action is preempted under 17 U.S.C. § 301(a) if: (1) the work involved falls within the general subject matter of the Copyright Act as specified by sections 102 and 103; and (2) the rights that the plaintiff asserts under state law are equivalent to those protected by the Act in section 106. *See* 17 U.S.C. 301(a); Downing v. Abercrombie & Fitch, 265 F.3d 994, 1003 (9th Cir. 2001). "Copyright preemption is both explicit and broad." G.S. Rasmussen & Assoc., Inc. v. Kalitta Flying Service, Inc., 958 F.2d 896, 904 (9th Cir. 1992). Federal copyright law preempts any state law claim which "depends on the same conduct which underpins [the] copyright claims." Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129, 1191 (C.D. Cal. 2001). State law causes of action are generally preempted when they seek damages that are identical to those sought for copyright infringement, *see*, *e.g.*, Bucklew v. Hawkins, Ash, Baptie & Co., 329 F. 3d 923, 934 (7th Cir. 2003), or where they seek to vindicate the same rights as plaintiff's copyright claims. *See* Morris v. Buffalo Chips Bootery, Inc., 160 F. Supp. 2d 718, 721 (S.D.N.Y. 2001).

In the Ninth Circuit, as in every other circuit, unfair competition claims premised on unauthorized use of copyrighted material are preempted. *See* Del Madera Properties v. Rhodes & Gardner, Inc., 820 F.2d 973, 977 (9th Cir. 1987), overruled on other grounds by Fogerty v. Fantasy, Inc., 510 U.S. 517 (1994); Warner Bros. v. American Broadcasting Cos., 720 F.2d 231, 247 (2d Cir. 1983) ("State law claims that rely on the misappropriation branch of unfair competition are pre-empted."); Durham Indus., Inc. v. Tomy Corp., 630 F.2d 905, 918-919 (2d Cir. 1980) (same). In Del Madera, the Ninth Circuit rejected the state law unfair competition claims because they overlapped with plaintiff's copyright claims:

> [Plaintiff's] argument is constructed upon the premise that the documents and information McCart furnished to the defendants belonged to [plaintiff] and were misappropriated by the defendants. [Plaintiff's] ownership of this material, and the alleged misappropriation by the defendants, are part and parcel of the copyright claim. Thus, [plaintiff's] unfair competition claim for misappropriation of its time and effort expended in producing the Tentative map and supporting documents is preempted.

Del Madera, 820 F.2d at 977.

Here, Perfect 10's state law claims are premised on Mega's allegedly improper exploitation of Perfect 10's copyrighted material. For example, Perfect 10 claims that Mega "commercially exploited and used millions of marketable adult-oriented photographs," (Complaint, ¶ 71) and that Mega is "selling without authorization, in competition with Perfect 10, billions of dollars in stolen songs, full length movies, and . . . computer software." (Complaint, ¶ 73.)  The gravamen of Perfect 10's state law claims is that Mega is unfairly competing with Perfect 10 by allegedly offering Perfect 10 and third party content which is not licensed.  Perfect 10 does not allege any "extra element" that takes its unfair competition claims outside the scope of copyright preemption.  *See* Summit Machine Tool Mfg. v. Victor CNC Systems, Inc., 7 F.3d 1434, 1142 (9th Cir. 1993) ("preemption . . . requires analysis of each theory [of unfair competition] to determine whether it contains the necessary qualitatively different extra element distinguishing it from copyright [or patent] protection").  Accordingly, these claims are preempted by the Copyright Act.

**E.     Publicity Rights**

> 1.     Perfect 10's publicity rights claims are preempted because they are based solely on the reproduction or distribution of photographs embodying those rights.

Perfect 10's publicity rights claims are also preempted by the Copyright Act.  Ninth Circuit cases addressing the intersection of publicity rights and the Copyright Act have held that copyright law preempts a publicity rights claim "when the entirety of [what is allegedly misappropriated] is contained within a copyright medium."  Laws v. Sony Music Entertainment, 448 F.3d 1134, 1141 (9th Cir. 2006).  In Laws, the plaintiff asserted a publicity rights claim based on defendant's use of a portion of plaintiff's sound recording.  Although defendant obtained a copyright license to the song, it did not obtain a license to Laws's publicity or personality rights. The Ninth Circuit held that because the sole basis of plaintiff's publicity rights claim was the unauthorized reproduction of her song, the publicity claim was preempted by the Copyright Act.  The court in Laws cited with approval to Fleet v. CBS, Inc., a California appeals court case where the court held that publicity rights claims against a studio which were based on "[plaintiffs'] dramatic performance in a film [defendant] sought to distribute" were preempted by

the Copyright Act.  Laws, 448 F.3d at 1142 (citing Fleet v. CBS, Inc., 58 Cal. Rptr. 2d 645 (Ct. App. 1996)).

Here, Perfect 10's claims are premised entirely on the alleged exploitation of copyrighted materials by Mega, and nothing more.  Perfect 10 claims that Mega infringed on Perfect 10's rights of publicity by "selling Perfect 10 images [and non-Perfect 10 images] for which Perfect 10 has been assigned rights of publicity."  (Complaint, ¶ 81 (emphasis added).)  These allegations are based entirely on Mega's alleged exploitation of copyrighted material.  As in Laws, Perfect 10's publicity rights claims are preempted and should be dismissed.

2.   In the event the publicity rights claims are not preempted, they should be dismissed as overly vague.

Perfect 10's allegations of infringement of its publicity rights by Mega are also overly vague because they fail to specify whether these rights were infringed by Mega directly or by Mega's users.  The Ninth Circuit has held—in a case involving Perfect 10—that publicity rights claims fall under the immunity provisions of Section 230 of the Communications Decency Act.  See Perfect 10, Inc. v. CCBill LLC, 488 F.3d 1102, 1119 n. 5 (9th Cir. 2007).  The allegations in Perfect 10's complaint make clear that Mega qualifies as the provider of an internet access service that is entitled to Section 230 immunity.  (See, e.g., Complaint, ¶ 22.)  Therefore, to the extent Perfect 10 claims infringement of its publicity rights by content uploaded by third parties, these claims are barred by Section 230.  Perfect 10 tries to circumvent this obvious bar by arguing that Mega "sold" images in which Perfect 10 has or was assigned the rights of publicity or "by partnering with affiliate sites that violate Perfect 10 rights of publicity."  (Complaint, ¶ 81.)  But these allegations are impermissibly vague.  Perfect 10 does not point to a single instance of use of Perfect 10's alleged publicity rights by Mega, or to a single "affiliate" site with which Mega allegedly has a contractual relationship.[6]  Perfect 10's publicity rights claims should

---

[6]  Even if Perfect 10 would show some sort of "affiliate" relationship, Section 230 would still bar claims against Perfect 10.  See Blumenthal v. Drudge, 992 F. Supp. 44, 50 (D.D.C. 1998) (holding that America Online is entitled to Section 230 immunity despite the fact that had a contractual relationship with Drudge and paid Drudge for the allegedly defamatory content in question).  Perfect 10's attempt to plead around this obvious bar renders its complaint impermissibly vague.

therefore be dismissed.

### IV.    Conclusion

Perfect 10's copyright claims should be dismissed.  Perfect 10 does not allege sufficient facts to state a claim for direct infringement, and its claims for contributory and vicarious infringement are deficient.  With respect to its trademark claims, those claims are just the copyright claims restated as trademark claims. In any event, Perfect 10 fails to allege the requisite knowledge on Mega's part to sufficiently state derivative claims for infringement.  The remainder of Perfect 10 claims are similarly barred because they are preempted by the Copyright Act.

Dated: March 28, 2011

Respectfully submitted,

**Focal PLLC**

By: */s/ Venkat Balasubramani*
        Venkat Balasubramani

**Gordon & Rees LLP**

Richard P. Sybert
Yuo-Fong C. Amato

Attorneys for Defendant Megaupload Limited

1

## **CERTIFICATE OF SERVICE**

2

The undersigned hereby certifies that on March 28, 2011, I caused the foregoing

3 Memorandum of Points and Authorities to be filed via the CM/ECF system and served on

4 opposing counsel via electronic notification.

5

I declare under penalty of perjury under the laws of the United States and the State of

6 California that the foregoing is true and correct and that this declaration was executed on March

7 28, 2011 at Seattle, Washington.

8

9                                        */s/ Venkat Balasubramani*
                                          Venkat Balasubramani
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28