Venkat Balasubramani (SBN 189192)
**Focal PLLC**
800 Fifth Ave, Suite 4100
Seattle, WA 98104
tel (206) 529-4827 / fax (206) 260-3966
*venkat@focallaw.com*

Richard P. Sybert (SBN 80731)
email *rsybert@gordonrees.com*
Yuo-Fong C. Amato (SBN 261453)
email *bamato@gordonrees.com*
**Gordon & Rees LLP**
101 W. Broadway, Suite 1600
San Diego, CA 92101
tel (619) 696-6700 / fax (619) 696-7124


Attorneys for Megaupload Ltd.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERFECT 10, INC.,  a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>MEGAUPLOAD LIMITED, a Hong Kong corporation; KIM SCHMITZ, an individual; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 11cv0191 IEG BLM<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT MEGAUPLOAD LIMITED'S MOTION TO DISMISS**<br><br>Judge: Hon. Irma E. Gonzalez<br>Date: May 23, 2011<br>Time: 10:30 a.m.<br>Courtroom: 1 |

## I.   INTRODUCTION

Perfect 10, Inc.'s opposition to Mega's motion to dismiss attacks Mega's basic structure of allowing end users to store, view, and download files.  Perfect 10 argues that Mega must be liable because Mega allegedly knows that "Mega does not have the rights to make copies of, store, distribute, or sell access to, anything on its servers."  These arguments ignore that Mega is an intermediary and, as such, may be held liable only if there is a showing that it acted in the face of knowing, specific infringements.  Perfect 10 should not be allowed to initiate a burdensome lawsuit based on bare allegations about Mega's overall business model, and its speculation that Mega "must have known" that its users infringed.  Perfect 10 argues that Mega has in place a "Rewards Program" through which it "encourages, facilitates, induces, and materially contributes to the infringements of its users."  However, Perfect 10 does not allege that anything about this "Rewards Program" specifically targets infringing activity or causes infringements. Perfect 10 simply speculates that because Mega does not own any of the content that resides on Mega's system, and because Mega encourages users to post popular materials, this means that Mega's rewards program induces infringement.  There is no legal support for this position.

Perfect 10's arguments regarding its trademark claims are similarly deficient—the alleged use of "descriptions of . . . files" which incorporate Perfect 10 Marks does not even approach trademark usage of Perfect 10's alleged marks.  A claim based on use in this manner, which identifies the source or location of content, is the type of claim the Supreme Court said impermissibly overlapped with copyright claims in <u>Dastar</u>.  In any event, Perfect 10 admits that the alleged infringements (as remote and tenuous as they are) were carried out by an "affiliated" third party website: <megaupload.net>.  Perfect 10 does not allege that Mega had any actual notice of these alleged infringements.  For these reasons, Perfect 10's trademark claims must fail.

Perfect 10's unfair competition claims should be dismissed because they are preempted by the Copyright Act.  Perfect 10 acknowledges that it asserts these claims in order to redress alleged injuries based on infringements of copyrights owned by third parties which Perfect 10 may not assert directly.  Finally, Perfect 10's publicity rights claims are barred by Section 230. Perfect 10 does not allege that Mega directly misappropriated any publicity rights owned or

assigned to Perfect 10, and it fails to allege that Mega participated in the creation of third party content which infringes on Perfect 10's publicity rights.

## II.    DISCUSSION

### A.    Perfect 10 Cannot Maintain a Claim for Direct Infringement Because it Fails to Allege Volitional Conduct

Perfect 10 argues that volitional conduct is not required to find liability for direct infringement, and that other cases have found conduct similar to Mega's alleged conduct to be sufficient to impose liability for direct infringement.  However, Perfect 10's argument is not supported by the cases it cited.  For example, in <u>Sega Enterprises Ltd. v. Maphia</u>, 857 F. Supp. 679, 683 (N.D. Cal. 1994), the court found volitional conduct because the evidence presented in a motion for preliminary injunction indicated that "Defendant specifically solicited this copying and expressed the desire that these video game programs be placed on the MAPHIA bulletin board for downloading purposes."  In <u>Arista Records LLC v. Usenet.com, Inc.</u>, 633 F. Supp. 2d 124, 148 (S.D.N.Y. 2009), volitional conduct was found because the bulletin board's employees not only solicited infringing files, they "used a screening policy that allowed employees to view files before they were uploaded and to move them to a generally available file for subscribers."  In <u>Capitol Records, Inc. v. Mp3tunes, LLC</u>, 2009 U.S. Dist. LEXIS 96521, 11-12 (S.D.N.Y. Oct. 16, 2009), the defendant actively added links to songs "[i]f users add[ed] music from websites other than sideload.com to their lockers."[1]  Here, no allegation exists and no colorable allegation can be made that Mega specifically solicited third parties to upload Perfect 10's copyrighted materials, that Mega screened and managed infringing files, nor that Mega directed users to infringing material that Mega itself uploaded.

In the alternative, Perfect 10 argues that Mega infringed Perfect 10's display rights by the mere act of storing on its server infringing files that third parties uploaded and displayed.  Perfect 10 cites to <u>Perfect 10, Inc. v. Amazon.com, Inc.</u>, 508 F.3d 1146, 1159 (9th Cir. 2007), where the Ninth Circuit found Google could be held liable for displaying thumbnail images because

---

[1] Similarly, in <u>Playboy Enters. v. Russ Hardenburgh</u>, 982 F. Supp. 503, 509 (N.D. Ohio 1997), voluntary conduct was found where "information uploaded onto the system from subscribers' home computers was held in an upload file where it was briefly screened by RNE employees before it was released, by those employees, onto the . . . BBS."

Google "initiate[d] and control[led] the storage of thumbnail images." However, the Ninth Circuit specifically noted that it was not addressing a situation where, as here, "an entity that merely passively owns and manages an Internet bulletin board or similar system violates a copyright owner's display and distribution rights when . . . users of the . . . system post infringing works." Id. (citing CoStar Group, Inc. v. LoopNet, Inc., 373 F.3d 544 (4th Cir. 2004)).

As a further alternative, Perfect 10 argues that Mega's website directly infringes on Perfect 10's copyrights because Mega distributes the copyrighted material by making it available for downloading. The Ninth Circuit rejected a similar theory against Google in Perfect 10 v. Amazon.com. See Amazon.com, supra, 508 F.3d at 719. This line of argument also completely ignores the requirement of volitional conduct for a finding of direct infringement. See CoStar Group, Inc. v. LoopNet, Inc., 373 F.3d 544, 555 (4th Cir. 2004); Sega, supra, 857 F. Supp. at 683; Arista Records, supra, 633 F. Supp. 2d at 148; Playboy, supra, 982 F. Supp. at 509.

Perfect 10 states that even if volitional conduct were required—which it is—Mega engaged in volitional conduct because it allegedly encouraged infringing activity. Even if this were true, such acts only speak to potential *contributory* liability for the conduct of its users, not to *direct* copyright infringement. Perfect 10 did not allege that Mega uploaded any content that is owned by Perfect 10—its only allegations are that Mega's platform was used for infringing activity and Mega was allegedly aware of and induced these infringements.[2] Perfect 10 therefore fails to state a claim for direct infringement.

**B.    Perfect 10's Claims for Contributory Infringement**

Perfect 10 acknowledges that the imposition of liability based on a theory of contributory infringement requires actual knowledge on the part of an intermediary such as Mega. In attempting to show this knowledge, Perfect 10 relies on the twenty-two notices sent by Dr. Norm Zada, the owner of Perfect 10, as well as its argument that "Mega does not have the rights to make copies of, store, distribute, or sell access to, anything on its servers."

---

[2] Paragraphs 22 through 30 of the Complaint detail the specific allegations against Mega. None of the allegations claim that Mega uploaded any Perfect 10 works. (*See* Complaint, ¶¶ 22-30.) Though Perfect 10 later refers to all defendants together as "Defendants," nothing in the Complaint refers to any alleged acts of direct copyright infringement by Mega. (*See* Complaint ¶¶ 31-44.)

1          1.    <u>Perfect 10's argument that Mega does not have rights to anything on its system is irrelevant</u>.

2          Perfect 10's repeated argument that Mega does not have rights to any of the materials

3    uploaded to its servers is a red herring.  This is true of <u>every</u> intermediary (whether it is a social

4    network, internet service provider, bulletin board, or search engine).  Mega exists as a service to

5    allow its users to upload and store files.  As an intermediary, it follows that the materials that are

6    uploaded to Mega's service are not owned by it or licensed directly from the copyright owner.  A

7    social networking site, or a company which offers hosting services or transmits email similarly

8    does not have a license to or own the content that is transmitted using those respective services.

9    Perfect 10's repeated assertions that Mega is responsible for the infringements of its users solely

10   because the content that is transmitted through Mega's network is not owned by Mega misses the

11   mark.  Indeed, Perfect 10 cites to no authority for this proposition, and none of the cases dealing

12   with intermediary liability cite to the fact that the intermediary processes content that it does not

13   own or has not licensed as a basis of imposing liability.

14         2.    <u>Mega did not provide material support in the face of actual knowledge</u>.

15         In support for its argument that Mega knew of infringing material uploaded by its users

16   and failed to remove such material, Perfect 10 relies on the email notices sent by Dr. Zada.[3]

17   These notices are telling.  First, nineteen of the twenty two notices do not even relate to any

18   material or rights purportedly owned by Perfect 10.  Of the remaining notices, one of the notices

19   purports to be a DMCA takedown notice.  (*See* Dkt. 11-5.) And Mega processed this notice.  The

20   other two emails did not identify Perfect 10 but instead referenced third parties who had

21   allegedly licensed their publicity rights to a company owned by Mr. Zada.  Cases establish that

22   an entity such as Mega need not process takedown notices which do not comply with the

23   DMCA. *See* <u>Perfect 10, Inc. v. CCBill LLC</u>, 488 F.3d 1102, 1113 (9th Cir. 2007).  Indeed, in

24   <u>CCBill</u>, where Perfect 10 was a party, the Ninth Circuit stated that Perfect 10 could not rely on

25   deficient DMCA notices to show knowledge on the part of an intermediary.  <u>Id.</u>  Perfect 10's

26   vague allegations regarding Mega's alleged failure to comply with the single notice which

27   
28      [3] Perfect 10 argues that these notices are not properly before the court because it is "extrinsic evidence." (Opposition, p. 22.) However, this ignores the rule that the Court may consider any materials referenced in the Complaint such as Dr. Zada's notices. *See* Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007).

1  requested removal of Perfect 10's copyrighted material are insufficient to show material

2  contribution in the face of actual knowledge on the part of Mega.

3  **C.      Perfect 10's Analogy to <u>Grokster</u>, and Claims of Inducement are Misplaced**

4          In <u>MGM v. Grokster</u>, 545 U.S. 913, 934-35 (2005), the Supreme Court held that "one

5  who distributes a device with the object of promoting its use to infringe copyright, as shown by

6  clear expression or other affirmative steps taken to foster infringement, is liable for the resulting

7  acts of infringement by third parties."  Significantly, the Supreme Court in <u>Grokster</u> required

8  evidence sufficient to show specific intent on the part of the defendant, and the Ninth Circuit has

9  interpreted Grokster consistent with this rule.  For example, in <u>Perfect 10, Inc. v. Amazon.com,</u>

10  <u>Inc.</u>, the Ninth Circuit held that "[defendant's] activities do not meet the 'inducement' test

11  explained in Grokster because [defendant] has not promoted the use of its search engine

12  specifically to infringe copyrights."  508 F.3d 1146, 1170 n.1 (9th Cir. 2007).

13          Courts have applied <u>Grokster</u> to find liability in the peer-to-peer context, but in so doing,

14  they have pointed to clear expressions of intent on the part of the defendants.  In <u>Columbia</u>

15  <u>Pictures Industries, Inc. v. Fung</u>, which is currently on appeal to the Ninth Circuit, Judge Wilson

16  held that defendants could be liable under the inducement theory where the defendants

17  "disseminated [messages] designed to stimulate others to commit infringements" 2009 U.S.

18  Dist. Lexis 12261 (C.D. Cal. Dec. 21, 2009).  The court also cited to the fact that the defendants

19  "directly assisted users in engaging in infringement." According to the court, the record in that

20  case was "replete" with instances of similar technical assistance provided by one of the

21  defendants.  <u>Id.</u>

22          In contrast, in this case, Perfect 10 does not allege that Mega manifested any "clear

23  expression or other affirmative steps taken to foster infringement."  Perfect 10's sole allegations

24  in this regard are centered around Mega's Rewards program, which according to Perfect 10

25  encourages users to post files which are frequently downloaded:

26          Every qualifying download of one of your files will earn you a reward point.
           When you have reached a certain number of points, you can redeem them for
27          premium status or even cash. There is no limit! And even better: The more
           download your files get, the more you can earn through our Megaupload Rewards
28          program.

1   (Complaint, ¶ 24.)  This allegation is insufficient to state a claim for inducement under Grokster,

2   which requires "a message designed to stimulate others to commit violations." Grokster, 545

3   U.S. at 937.  Perfect 10 does not allege that Mega targets any particular type of user or any

4   particular type of content, much less infringing content.  Nor is there any allegation that Mega

5   provided any assistance to particular users or caused any infringements at issue.  Perfect 10's

6   only allegation is that Mega encourages end users to store files on its service that will be popular,

7   including content distributed by a copyright owner and/or licensee.  If this alone were sufficient

8   to state a claim under Grokster, any number of services where end users post content that is

9   viewed or accessed by others—YouTube, Facebook, and more—would be liable for

10  infringement based on the theory of inducement.  The Supreme Court in Grokster did not intend

11  this type of a result, and the various opinions in that case include language suggesting that

12  specific intent to encourage infringement—rather than intent to encourage use of the service—is

13  the proper test.

14          In addition to Perfect 10's failure to allege facts which show "clear expression or other

15  affirmative steps taken to foster infringement," there is another key difference between Mega's

16  service and the services which were found to induce infringement in A&M Records, Inc. v.

17  Napster, Inc., 239 F.3d 1004 (9th Cir. 2001) ("Napster"), Grokster, and similar cases.  In those

18  cases, the technology itself was designed with the intent to exchange infringing copyrighted

19  material in a way that was impractical (if not impossible) to police.  In contrast, Mega offers a

20  service which is similar to services offered by many companies in which courts have not applied

21  the rule from Napster or Grokster.  In the YouTube case the court noted that Grokster's

22  inducement rule is inapplicable to an intermediary such as YouTube:

23          [T]he Grokster model does not comport with that of a service provider who
            furnishes a platform on which its users post and access all sorts of materials as
24          they wish, while the provider is unaware of its content, but identifies an agent to
            receive complaints of infringement, and removes identified material when he
25          learns it infringes.

26  Viacom Int'l, Inc. v. YouTube, Inc., 718 F. Supp. 2d 514, 526 (S.D.N.Y. 2010).  Perfect 10 does

27  not make any credible arguments as to why Mega falls into the category of the services in the

28  Napster and Grokster cases, rather than the services described in the YouTube case.  Perfect 10

merely argues that Mega has created a "device—a computer system that has become wildly popular with 45 million unique visitors per day—that enables users to receive and distribute massive amounts of infringing works with a few pushes of a button."  (Opposition 15:4-6.) Perfect 10's vague allegations regarding Mega's popularity, and the fact that Mega encourages the posting of materials that are likely to be popular—which are completely untethered from allegations that Mega specifically encourages infringements—are insufficient to invoke Grokster.

**D.     Perfect 10's Claims for Vicarious Infringement Fail Because Mega Lacks the Ability to Supervise and Control the Infringement**

Perfect 10 does not address Mega's argument that Mega lacks the ability "to supervise and control the infringement, not just affect it."  IO Group, Inc. v. Veoh, 586 F. Supp. 2d 1132, 1154 (N.D. Cal. 2009).  Perfect 10 argues that Mega controls its platform and is thereby vicariously liable for any alleged infringements effected by its end users, but the "right and ability" element requires more than a showing that Mega had the right and ability to "control its system."  *See* Id. at 1154.  Perfect 10 fails to allege that Mega had the "practical ability to police the [infringing] conduct."  *See* Amazon.com, supra, 508 F.3d at 730.  Perfect 10's contentions that Mega should be vicariously liable for infringements effected by its users based on Mega's ability to delete files uploaded by users or terminate users is problematic (as well as insufficient). As Perfect 10's own allegations make clear, Mega had in place a policy, albeit one which Perfect 10 claims does not comply with the DMCA.  Perfect 10's position would turn the DMCA on its head, as it would result in an intermediary being held vicariously liable for the infringements of its users by the very acts which would potentially entitle the intermediary to DMCA protection and prevent infringement.

**E.     Perfect 10's Lanham Claims Fail Because they are Barred by Dastar and are Derivative Claims Unsupported by Allegations of Knowledge**

Perfect 10 does not dispute in its Opposition that Mega makes no direct use of Perfect 10 marks.  According to Perfect 10, searches for Perfect 10 images from an "affiliated" third party website <megaupload.net> "will return descriptions of the files (links) incorporating Perfect 10

Marks." (Opposition 16:21-28.)  This is insufficient to support a trademark claim for three reasons.  First, this type of nominative use does not constitute trademark use. Second, this is precisely the type of use identifying a communicative product that cannot support a claim for relief separate from copyright infringement under <u>Dastar</u>.  Third, the use is not by Mega itself but by a third party.  Perfect 10 must allege actual knowledge of specific trademark infringements which Mega was aware of in order to bring a claim for derivative liability.  Perfect 10 fails to do this and therefore its claims for infringement must be dismissed.

Perfect 10's claims for trademark dilution are similarly insufficient.  Perfect 10's arguments highlight that this is also the type of claim that is precluded by <u>Dastar</u>.  Perfect 10 argues that it is suffering from dilution because Mega "intermingles Perfect 10's high-quality images containing Perfect 10's trademarks with images of poor quality or of an offensive or illegal nature." (Opposition 18:5-7.)  However, Perfect 10 has a remedy available if its claims of unauthorized reproduction are valid, and this lies in the form of a copyright action.  To recognize a claim for trademark dilution based on the alleged unauthorized reproduction by Mega of Perfect 10 content would impermissibly broaden the scope of Perfect 10's copyrights.  It is precisely this concern that the Supreme Court raised in <u>Dastar</u>.  In any event, these are derivative claims as well, and Perfect 10 has not plausibly alleged the actual knowledge that is required to hold Mega liable for any dilution committed by third parties.

**F.   Perfect 10's Unfair Competition are Preempted by the Copyright Act**

Perfect 10's claims of unfair competition are premised on its argument that Mega is allegedly "exploiting the publicity rights and trademark rights of Perfect 10, as well as the intellectual property rights of third-parties." (Opposition 19:12-13.)  As set forth below, the publicity rights claims are legally untenable.  Perfect 10's claims that Mega engages in unfair competition because it is allegedly exploiting the intellectual property rights of third parties are similarly deficient.  Perfect 10 acknowledges that it "has no standing to assert copyright or other intellectual property claim[s] on behalf of third parties . . ." (Opposition 20:1-3.)  Yet this is exactly what its unfair competition claims seek to accomplish.  Perfect 10's complaint ultimately is that it is unable to compete because of the alleged infringements perpetrated by Mega.  Perfect

10's claims thus lack the "extra element" that is required to escape application of the preemption clause.  Perfect 10's theory would allow virtually any competitor of a defendant accused of copyright infringement to sue based on alleged infringements, whether or not the plaintiff was the copyright owner or an exclusive licensee.  The Copyright Act contains limitations on who can pursue a copyright infringement lawsuit.  17 U.S.C. § 501(b).  Perfect 10's theory of unfair competition would render these limitations meaningless.  *See* <u>Sybersound Records, Inc. v. UAV Corp.</u>, 517 F.3d 1137, 1151 (9th Cir. 2008) (rejecting unfair competition claims based on the infringements of copyrights of third parties on the basis that the plaintiff "would be litigating a third party copyright infringement claim under the guise of state law").

**G.     Perfect 10's Publicity Rights Claims are Preempted or Barred by Section 230**

Perfect 10 does not respond to Mega's argument that publicity rights claims are preempted by the Copyright Act "when the entirety of [what is allegedly misappropriated] is contained within a copyright medium."  <u>Laws v. Sony Music Entertainment</u>, 448 F.3d 1134, 1141 (9th Cir. 2006).  The argument for application of the preemption doctrine is particularly strong in this case since Perfect 10 is alleging that Mega should be liable for using the names of certain third-party models whose content Perfect 10 alleges is also infringed via Mega's service.

Separately, Perfect 10 alleges that the names of certain third-party models are used to "drive traffic" from third party sites to Mega's websites.  Neither the complaint nor Perfect 10's opposition provide any detail into Mega's alleged involvement in this activity but it is clear that Perfect 10's claims are based on the acts of third parties—*i.e.*, other websites and end users. Ninth Circuit precedent—decided against Perfect 10—makes clear that publicity rights claims fall within Section 230's broad grant of immunity.  *See* <u>Perfect 10, Inc. v. CCBill LLC</u>, 481 F.3d 751, 768 (9th Cir. 2007) (holding that state law publicity rights claims are subject to Section 230 immunity).  Perfect 10 implicitly agrees that Section 230 precludes Mega's liability for state law claims such as those based on publicity rights violations to the extent Mega did not "create or develop" the content at issue.  However, Perfect 10 cites to the Ninth Circuit's decision in <u>Fair Housing Council of San Fernando Valley v. Roommates.com, LLC</u>, 521 F.3d 1157, 1162 (9th Cir. 2008) and argues that Mega is not entitled to Section 230 immunity because it created or

developed the content at issue.

The Ninth Circuit's decision in <u>Roommates.com</u> is distinguishable.  The website in Roommates.com contained a drop-down menu which required users to input the offending content—*i.e.*, select their race and racial preferences.  Under those circumstances, the Ninth Circuit held that the website was not entitled to Section 230 immunity with respect to claims that it violated state fair housing laws.  <u>Id.</u>  In contrast, in this case, Perfect 10 does not allege that Mega offered any sort of pull down menu or structured its websites to elicit certain information from its end users.  Perfect 10's reliance on <u>Roommates.com</u> is thus misplaced.

### III.   Conclusion

Perfect 10's complaint is a broad attack on Mega's business model, without accompanying specific allegations as to how exactly Mega should be held liable for the infringements allegedly committed by its end users.  Perfect 10 does not allege sufficient facts to state a claim for direct infringement because it does not and cannot allege any volitional conduct on the part of Mega when users upload or download files on Mega's systems.  Perfect 10's claims for contributory and vicarious infringement and inducement are similarly deficient.  Perfect 10's repeated assertions that Mega does not own any content that is transmitted via Mega's service is a red herring.  Perfect 10 does not allege that Mega was structured in a way as to induce infringement; nor does Perfect 10 allege that Mega intended its users to infringe.  Perfect 10's trademark claims are merely copyright claims which are recast as trademark claims, and subject to the bar articulated by the Supreme Court in <u>Dastar</u>.  In any event, Perfect 10 fails to allege the requisite knowledge on Mega's part to sufficiently state derivative claims for infringement.  The remainder of Perfect 10's claims are barred because they are preempted or subject to Section 230.

Dated: May 16, 2011

Respectfully submitted,

by   */s/ Venkat Balasubramani*
Venkat Balasubramani
**Focal PLLC**

**Richard P. Sybert**
**Gordon & Rees LLP**
Attorneys for Defendant Megaupload Limited

1

## <u>CERTIFICATE OF SERVICE</u>

2

        The undersigned hereby certifies that on May 16, 2011, I caused the foregoing Reply in

3

Support of Megaupload Limited's Motion to Dismiss to be filed via the CM/ECF system and

4

served on opposing counsel via electronic notification.

5

        I declare under penalty of perjury under the laws of the United States and the State of

6

California that the foregoing is true and correct and that this declaration was executed on May

7

16, 2011 at Seattle, Washington.

8

9

                                */s/ Venkat Balasubramani*
                                Venkat Balasubramani

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28